REGENT MFG. CO. et al. v. PENN ELECTRICAL & MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1902.)

No. 888.

1. PATENTS—VALIDITY AND INFRINGEMENT—MIRRORS.

The Wright & Curry patent, No. 631,033, for a mirror, consisting of a combination of an unframed mirror with beveled edges, a spring-armed metal supporting frame and grooved clips adapted to be rotatably mounted in the arms of the frame to clasp the edges of the mirror and hold it frictionally at any angle to which it may be adjusted by means of the spring pressure of the frame, while the elements were old, shows a combination which produces a useful and new unitary result, and which involved invention. Claims 3 to 6, inclusive, construed, and *held* not anticipated and infringed.

2. SAME—INJUNCTION AGAINST INFRINGEMENT—PATENTEE.

A patentee, who has assigned his patent, and is in the employ of another, who is making an infringing article, has no ground to object to a decree enjoining him as well as his employer from making and selling such article, where he is not held for the damages caused by the infringement.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

From a decree awarding the Penn Company an injunction against the Regent Company and Curry, and an accounting against the Regent Company alone, this appeal is prosecuted.

The suit was based on claims 3 to 6, inclusive, of letters patent No. 631,033, August 15, 1899, John A. Wright and James H. Curry, assignors to the Penn Company, as follows: "(3) In a mirror, the combination of a glass, a spring-metal frame normally narrower than the glass, clips 4 grooved on their inner edges and having fixed rotatable mounting in the frame sides, the grooved clips being adapted, upon expansion of the frame, to embrace and frictionally hold opposite edges of the glass at any desired point in the length of the latter, substantially as shown and described. (4) In a mirror, the combination of a glass, an expansible spring-metal frame normally narrower than the glass, and clips on opposite sides of the frame, adapted, upon expansion of the frame, to embrace and frictionally engage opposite edges of the glass at any desired point in the length thereof, whereby the relative position of the glass and frame may be varied, substantially as shown and described. (5) In a mirror, the combination of a glass having its edges continuous and uninterrupted by apertures or other bearing-points, an expansible spring-metal frame normally narrower than the glass, and clips grooved in the direction of the glass edges, said clips secured to opposite sides of the expansible frame and adapted to embrace the glass edges at any desired point in the length thereof, the clips holding the glass by frictional engagement, substantially as shown and described. (6) In a mirror, the combination of a glass having beveled or tapering edges, a frame, clips for securing the glass to the frame, the clips having V-shaped sockets for embracing the back and bevel of the glass without encroaching on the reflecting-surface thereof, and means for frictionally holding the clips at any desired point on the glass edges, the latter having wedging action in the clip-sockets, substantially as shown and described."

When the invention was made, both Wright and Curry were connected with the Penn Company, to which they assigned their application. The Penn Company at once began to make and sell the new mirrors, and up to the time of taking testimony herein had marketed more than half a million of them. Curry left the Penn Company some time in 1900. About the same time the Regent Company prepared to manufacture mirrors. In February, 1901, the Regent Company contracted with Curry "to thoroughly organize the mirror factory of the Regent Company, and to suggest such improvements as may appear desirable, and to assist in any capacity necessary to further the interests of said company," at a stated salary. This suit was commenced in April following. The court held that Curry was estopped to deny the validity of the patent; that the Regent Company was in such privity with Curry that it, too, was estopped; that the patent was infringed; and that the Regent Company alone should account, since Curry had no financial interest in the business or in the profits therefrom.

The prior art is illustrated in the record by letters patent No. 52,531, February 13, 1866, to Chappell; No. 60,699, January 1, 1867, to Cumming; No. 137,383, April 1, 1873, to Olander; No. 167,558, September 7, 1875, to Palmieri; No. 241,512, May 17, 1881, to Ritter; No. 377,282, January 31, 1888, to Wiederer; No. 479,092, July 19, 1892, to Julian; No. 544,300, August 13, 1895, to Hanlon; No. 606,866, July 5, 1898, to Heineken; No. 615,250, December 6, 1898, to Clark; No. 615,928, December 13, 1898, to Wagner.

An alleged prior use is claimed by appellants to be shown in their exhibit "Curry & Company's 1894 and 1895 Mirror."

Under the assignments, the Regent Company contends: (1) That it is not estopped to deny the validity of the patent; (2) that the patent is invalid (a) in view of the prior patents, (b) by reason of prior use, and (c) because it comprises a mere aggregation of old elements and results, and not a patentable combination; and (3) that there is no infringement in the light of the limiting amendments of the claims shown by the file wrapper and contents. And Curry insists that the injunctive decree against him is erroneous.

Other facts are stated in the opinion.

Thomas F. Sheridan and P. C. Dyrenforth, for appellants.

Edward Rector, for appellee.

Before JENKINS and BAKER, Circuit Judges, and SEAMAN, District Judge.

BAKER, Circuit Judge, after making this statement, delivered the opinion of the court.

1. There is evidence in the record which may fairly be claimed to show that the Regent Company had designed the alleged infringing mirrors before employing Curry, that Curry had no voice in deciding what should be manufactured, and that his efforts were directed to organizing the factory so as to produce better and cheaper what the Regent Company had already determined upon. On this showing there is basis for contending that the Regent Company is not involved in the estoppel against Curry. Boston Lasting-Machine Co. v. Woodward, 27 C. C. A. 69, 82 Fed. 97. From other evidence an inference might possibly be warranted that the Regent Company and Curry were knowingly co-operating in an invasion of appellee's rights. We find it unnecessary, however, to pass upon this evidence, in view of our conclusions upon the other questions.

2. (a) The prior patents disclose mirrors, with and without beveled edges, with and without frames, spring-metal frames, and grooved clips. For example, in the patents most strongly relied on, Palmieri shows a mirror gripped between two slotted clips, which are held rigidly with respect to each other and the mirror's edges by a bar connecting them across the back of the mirror, but he does not employ a spring frame, nor clips rotatably mounted in such a frame and adapted to engage and hold the glass by the frame's pressure. Ritter displays a spring wire support, in which the points of the forks are bent inward to set in holes in a solid frame; and Heineken exhibits a particular "detachable clamping and pivot-supporting device for wash basins." These come as near to appellee's structure as any of the prior patents. None forestalls the combination for which the claims in suit are made.

(b) It is not shown when or by whom appellants' exhibit "Curry & Company's 1894 and 1895 Mirror" was made. Curry testifies that the exhibit is a duplicate of a style that Curry & Co. manufactured in 1894 and 1895. In other respects, also, we are not satisfied that the proof of the alleged prior use comes up to the point where it can be accepted to defeat a patent; and especially in this case, where Curry and his employer ask that an asserted use by Curry & Co. in 1894 be taken to falsify Curry's oath in his application for the patent in suit, made in 1899. But if the prior use were duly proven, the exhibit, at its full face value, amounts to no more than the prior patents. The mirror, substantially as in the Palmieri method, is supported and held between two clips (loops) formed in the ends of a wire that extends across the back of the glass. The wire, by means of its ends as pivots, is upheld in a forked frame that has sufficient spring to admit the pivots into their bearings. Without noting other differences, it is plain that the glass is not sustained between the clips by means of the pressure of a spring-armed frame. The real pertinence of the Curry exhibit, and also of the prior patents, comes in considering the next question.

(c) Was a patentable combination formed by bringing together these old elements—an unframed mirror with beveled edges, a spring-armed supporting frame, and grooved clips adapted to be rotatably

mounted in the arms of the frame? Or was this an aggregating of old elements and results? If a useful and new unitary result appears as the product of the interaction of the elements, though all be old, the union is a true combination; and, if unpatentable, it is for want of invention. Parks v. Booth, 102 U. S. 96, 104, 26 L. Ed. 54; Johnson v. R. Co., 33 Fed. 499; National Cash Register Co. v. American Cash Register Co., 3 C. C. A. 559, 53 Fed. 367. In the patent in suit it is evident that the spring-metal frame forms a support for the rotatable clips which have their bearings in the arms of the frame, presses the clips inwardly against the edges of the glass with sufficient force to cause the clips to embrace and frictionally to hold the glass at any desired point in its length, and produces sufficient friction between the arms and the clips to hold the glass in angular position. The clips rotatably support the glass so that it may be turned, frictionally and yieldingly sustain the glass in its lengthwise adjustments, and react frictionally against the spring-arms to hold the glass in its angular positions; and the glass, to the accomplishment of the resulting adjustability, necessarily reacts upon the clips and spring-arms. Thus, by the co-operation of the three old elements, is produced a unitary result—the quick, easy, and sure adjustability of the mirror with respect to height and angle. The improvement is confessedly novel. Its utility, apparent on its face, is reaffirmed by its great success. But did the production of it require the exercise of the inventive faculty? The conjunction of its being a true mechanical combination, its novelty, its great utility, and its notable commercial success, is persuasive that more than mechanical skill was required in taking this new step in the very, very ancient art of supporting and adjusting mirrors. The device seems exceedingly simple. But its very simplicity, in such an old field, should be a warning against a too ready acceptance of the ex post facto wisdom of the bystander.

3. Between the Regent and the Penn mirrors there are some differences in appearance, due mainly to the use of round wire in the former where the latter has flat; but in each are the same elements, combined and co-operating in the same way, and producing the same result. The defense of noninfringement rests upon the insistence that a spring frame, to be within the patent, must be literally and independently of the clips "normally narrower than the glass," and that the Regent spring frame, by reason of an asserted greater rigidity of the round wire and wider extension of the clips, does not need to be and is not "normally narrower than the glass." There can be no question but that the Regent clips, like the Penn, have "rotatable mountings in the frame sides," and are "adapted, upon the expansion of the frame, to embrace and frictionally hold opposite edges of the glass," and that the results are due to the inward pressure of the spring-arms. In view of the above phrases quoted from the claims, as well as from a consideration of the whole patent, it would seem that a fair and reasonable interpretation would only require the glass to be held in a spring frame which had to be expanded to receive it. Such a frame, counting all that embraces the glass as frame, is of necessity "normally narrower than the glass." But if the construc-

tion of the claims be adopted that the naked spring-arms, when free from pressure, must stand nearer each other than the width of the glass, then an infringing mirror may be made noninfringing by bending the spring arms a hundredth of an inch, and vice versa, and the same mirror may at one moment infringe and not at the next. Verily, this would be an instance in which the letter killeth. But we do not understand the Regent Company to urge such a construction, except in view of the history of the application in the Patent Office, from which the contention is drawn that the original claim was intentionally restricted by inserting "normally narrower than the glass" as an amendment to meet the views of the examiner, and that a literal construction is, therefore, required, regardless of the nature and scope of the invention. The trouble is, the premise. is not well grounded in fact. Original claims 2 and 4, for which claim 3 now stands, read:

"(2) The combination of a mirror, and a spring mounting adapted to be expanded to engage opposite edges of the mirror and hold it by frictional engagement, substantially as shown and described." "(4) The combination of a mirror, a forked spring-metal frame, and clips trunnioned in the frame forks, the frame being adapted to expand to cause the clips to engage opposite edges of the mirror and hold the latter by frictional contact, substantially as shown and described."

Manifestly, a spring mounting (arms and clips) adapted to be expanded to engage and hold the glass by friction has to be normally narrower than the glass. The examiner did not suggest that he would allow the claims if the alleged restrictive phrase were inserted, but went to the substance, as he viewed it, and rejected the claims upon references to the Ritter and Heineken patents, holding that there was no invention in the applicants' device. The following claim was then offered:

"In a mirror, the combination of a glass, a spring-metal frame normally narrower than the glass, and clips on opposite sides of the frame adapted, when the frame is expanded, to embrace opposite edges of the glass, and at any desired point in the length thereof, and detachably secure the same, substantially as shown and described."

The examiner did not say that, the words "normally narrower than the glass" having now been added, he would allow the claim; but, without indulging in verbal criticisms, rejected this claim on the merits, upon the same references and for the same reason as before. Present claim 3 was then filed, and disallowed on the same grounds. The applicants then added present claims 4, 5, and 6, and requested the examiner to make his decision final, so that they might appeal. The examiner's understanding of the scope and meaning of the claims in suit is shown by his statement on appeal:

"The claims appealed cover a spring-metal frame to embrace a hand-mirror, the glass of which is held directly in two grooved clips, rotatably mounted in the sides of the frame and held against the glass by the spring pressure of the frame. * * * It is held that there is no invention in applying the trunnion clips shown by Heineken to the mirror frame shown by Ritter."

The board of examiners in chief unanimously reversed the decision, saying, among other things:

"The frame of Ritter is not adapted without change to support the clamps of Heineken. This device is one clearly an improvement over Ritter's, and contains novelty which is more than the result of merely copying or using an old device in the place of Ritter's prongs and holes."

So, the applicants never acquiesced in the examiner's action; the examiner did not require the amendment as a condition precedent to the allowance of claims narrower than originally made; and the appellate tribunal allowed the claims after examining the device in the spirit that giveth life.

Respecting Curry: The decree prohibited him from continuing to make the Regent infringing mirrors, but did not hold him in damages. To the latter part of the decree the Penn Company is not objecting. Curry, as patentee, is estopped to deny the validity of the claims; and, as a mere employé, that he "may be enjoined whenever this is necessary to protect the patentee (holder of the patent) against future infringements, is universally conceded." 3 Robinson on Patents, § 912. Under the circumstances of this case, we think that Curry has no cause to complain.

The decree is affirmed.