THOMSON–HOUSTON ELECTRIC CO. v. OHIO BRASS CO. et al.

(Circuit Court, D. Massachusetts.   April 27, 1904.)

No. 1,237.

1. PATENTS—INVENTION—COMBINATION OR AGGREGATION OF OLD ELEMENTS.
   The combination of two known devices in a single device, which results in a new utility by uniting the functions of the two in a single article, may involve invention.

2. SAME—INFRINGEMENT—INSULATING TURN-BUCKLE.
   The Van Depoele patent, No. 394,039, claim 18, for a turn-buckle the body portion of which is composed of insulating material, for use on the span wire in overhead trolley systems, is for a combination which unites the functions of a turn-buckle and an insulator, previously used separately, and discloses invention.  Also *held* infringed.

In Equity.

Thomas J. Johnston, for complainant.

Edmund Wetmore and Macleod, Calver & Randall, for defendants.

HALE, District Judge.   This suit is brought for infringement of claim 18 of letters patent No. 394,039, dated December 4, 1888, to Charles J. Van Depoele.   The claim alleged to have been infringed is as follows:  "A turn-buckle, the body portion of which is composed of insulating material, substantially as described."   The defenses are that there is no invention, and that there has been no infringement. The claim covers an insulated turn-buckle, such as is alleged to be used on an electric railway under the suspended conductor system.   The purpose of the device is to unite in a single structure means for tightening the span wire and means for furnishing insulation between the trolley wire and the ground.   It is well known that the grounded rails on an electric road usually form the return circuit of an overhead trolley railway.   Necessarily the trolley wire must be carefully insulated from the ground, or from any structure electrically connected with the ground.   It is alleged that the practice is to insulate the trolley wire itself from the span wire, and then to place an insulating turn-buckle in the span wire also, so that, if any accident should destroy the insulation at the first point, there would still remain effective insulation between the electric current and the ground.   Previous to this device it is alleged that a metallic turn-buckle had always been used, with separate insulating devices wherever such insulation was required. The problem in the mind of the inventor was to unite the two functions of tightening the span wire and at the same time affording an electrical barrier to prevent the passage of the electric current.

The defendants urge the defense of invalidity.  They insist that turn-buckles were old, and insulating material was old, and that it was not invention to put them together.   It does not appear that these two elements have ever been put together until this union was effected by Van Depoele.   The devices referred to in the prior art are ordinary metallic turn-buckles and swivels.   Some of the swivels to which reference is made contain insulating material, and are al-

leged to have been used for purposes of insulation as well as for the usual purposes of swivels. Where swivels are so constructed, they require only the addition of a screw to make them insulating turn-buckles. The Clark patent, No. 227,095, comes the nearest to presenting a case of anticipation, but this patent, in any event, requires the function of tightening to be added to the swivel in order to make it a reference for an insulating turn-buckle. It is claimed, too, that the Clark patent does not even present an insulated swivel, and that provision is made for preventing the insulation, instead of effecting it. We think, however, the discussion on these lines is immaterial. The whole question of invalidity is presented clearly and distinctly by the learned counsel for the defendants in his claim that the turn-buckle of the patent in suit presents merely a union of two well-known devices, namely, the old metallic turn-buckle and insulating material, which also was old. It is urged with great force that the mere uniting of two instruments is not invention. The well-known theory of the patent law is cited as contained in the Supreme Court decision that it is not invention to substitute rubber for part of the lead in lead pencils, so that the lead pencil will form a combined pencil and eraser. Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719. See, also, Rubber Tip Pencil Co. v. Howard, 20 Wall. 498, 22 L. Ed. 410. The Supreme Court has announced the doctrine with great clearness that the combination of old devices into a new article without producing any new mode of operation is not invention. Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749; Floresheim v. Schilling, 137 U. S. 64, 11 Sup. Ct. 20, 34 L. Ed. 574. These cases present the uniting of two functions without adding any new utility. On this subject the well-known doorknob case is perhaps the leading one, and demands careful consideration. Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683. The patent in that case was for a clay or porcelain doorknob. The court said:

"But in the case before us the knob is not new, nor the metallic shank and spindle, nor the dovetail form of the cavity in the knob, nor the means by which the metallic shank is securely fastened therein. All these were well known, and in common use; and the only thing new is the substitution of a knob of a different material from that heretofore used in connection with this arrangement. Now, it may very well be that by connecting the clay or porcelain knob with the metallic shank in this well-known mode an article is produced better and cheaper than in the case of the metallic or wood knob; but this does not result from any new mechanical device or contrivance, but from the fact that the material of which the knob is composed happens to be better adapted to the purpose for which it is made. The improvement consists in the superiority of the material, and which is not new, over that previously employed in making the knob. But this, of itself, can never be the subject of a patent. No one will pretend that a machine made in whole or in part of materials better adapted to the purpose for which it is used than the materials of which the old one is constructed, and for that reason better and cheaper, can be distinguished from the old one; or, in the sense of the patent law, can entitle the manufacturer to a patent. The difference is formal, and destitute of ingenuity or invention. It may afford evidence of judgment and skill in the selection and adaptation of the materials in the manufacture of the instrument for the purposes intended, but nothing more."

But on careful examination of the device claimed in the patent in suit, and of all that class of authorities to which we have called attention, we are satisfied that the insulated turn-buckle does not come

within the reasoning of these cases. In the lead pencil case no new utility was presented by the patent. The device still remained a lead pencil at one end and an eraser at the other end. The combination of the old devices did not produce any new and single mode of operation. The two old functions were left of erasing at one end and of writing at the other. So, also, in the doorknob case, the patent did not produce any new mode of operation. It did not unite any two functions. The doorknob was still a doorknob, and only a doorknob. It presented a plain, simple substitution of materials and an improvement of a commercial product by such substitution. But, while the commercial product was improved, it was not made functionally different. The courts have, however, distinctly held that where to a prior structure a part is added which gives a new utility, there is invention. In the Faber Case, which we have cited, Mr. Justice Hunt clearly draws the distinction between a case where no new utility is found and a case in which a new combination does result in a new utility. He says, in speaking of the result in the matter of the rubber-ended lead pencil:

"A pencil is laid down and a rubber is taken up, one to write, the other to erase. A pencil is turned over to erase with, or an eraser is turned over to write with. The principle is the same in both cases."

He further, in his opinion, shows other instances of the same character. He says:

"It is the case of a garden rake, on the handle end of which should be placed a hoe, or on the other side of the same end of which should be placed a hoe. In all these cases there might be the advantage of carrying about one instrument instead of two, or of avoiding the liability to loss or misplacing of separate tools. The instrument placed upon the same rod might be more convenient for use than when used separately. Each, however, continues to perform its own duty, and nothing else. No effect is produced, no result follows from the joint use of the two. A handle in common—a joint handle —does not create a new or combined operation. The handle for the pencil does not create or aid the handle for the eraser. The handle for the eraser does not create or aid the handle for the pencil. * * * Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable. * * * The combination, to be patentable, must produce a different force or effect, or result in the combined forces or processes from that given by their separate parts. There must be a new result produced by their union. If not so, it is only an aggregation of separate elements. An instance and an illustration are found in the discovery that by the use of sulphur mixed with india rubber the rubber could be vulcanized, and that without this agent the rubber could not be vulcanized. The combination of the two produced a result or an article entirely different from that before in use. * * * A stem-winding watch key is another instance. The office of the stem is to hold the watch or hang the chain to the watch. The office of the key is to wind it. When the stem is made the key, the joint duty of holding the chain and winding the watch is performed by the same instrument. A double effect is produced, or a double duty performed, by the combined result. In these and numerous like cases the parts co-operate in producing the final effect; sometimes simultaneously, sometimes successively. The result comes from the combined effect of the several parts, not simply from the separate action of each, and is therefore patentable."

In the case at bar the insulated turn-buckle presents a case in which there is combined in one device the utility of tightening the wire and of insulating it at the same time and in the same instrument. We think this involves invention. The device is a very simple one, but its

simplicity should not be urged against its patentability. As in the case of the watch key, a double effect is produced, and a double duty performed by the combined result. To the ordinary duties of the turn-buckle is added the new function of insulation. After the combination is made it seems entirely easy and simple, so easy and simple that expert witnesses readily say that nothing was involved in it but the mere "expected skill of the mechanic." But we must remember that we are examining a combination after it is made, and we must not be misled by what Judge Putnam calls "the ease with which interested ingenuity dresses up matters occurring after the fact." American Pulp Company v. Howland Company (C. C.) 70 Fed. 986. However obvious the combination before us may be said to have been, it was never made before, so far as the testimony shows. In Webster Loom Company v. Higgins, 105 U. S. 580, 26 L. Ed. 1177, Mr. Justice Bradley says:

"It may be laid down as a general rule, though perhaps not an invariable one, that, if a new combination and arrangement of known elements produce a new and beneficial result never attained before, it is evidence of invention. * * * It may have been under their very eyes. They may almost be said to have stumbled over it, but they certainly failed to see it, to estimate its value, and to bring it into notice. * * * Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit."

In Regent Company v. Penn Company, 121 Fed. 83, 57 C. C. A. 334, Judge Baker says:

"The device seems exceedingly simple, but its simplicity in such an old field should be a warning against a too ready acceptance of the ex post facto wisdom of the bystander."

On examination of the device in suit, we think it presents more than an aggregation. Although it is a simple device, under the great mass of patent decisions relating to simple devices we think this may properly be held not to have been the result of the mere use of the skill of a mechanic, nor the mere use of the reasoning faculty, but to present some patentable invention.

It remains for the court to inquire whether or not the patent has been infringed. The device of the patent is a turn-buckle, the body of which has in it an insulating material. The thought of the inventor is, as we have said, to combine the process of tightening and insulating in one instrument. To do this he makes an ordinary turn-buckle with a body of an insulating material. The body of a turn-buckle is the middle of it, the part between the ends, the portion that rotates. This is the natural construction to give to the term "body portion" as used in the patent. As you take a turn-buckle in your hand and look at it, it naturally divides itself into two parts. The portion which constitutes the body is one part, and the ends are the other part; in other words, the body is everything except the ends. This interpretation of the word "body" is borne out by the use of the term in former patents. It is not necessary that the whole of the body should be of insulating material. The inventive idea was that there should be enough insulation in the turn-buckle to make the device perform the function of an insulator. The device which the defendants use is composed partly of metal and partly of insulating material. The complainant's device

has the same composition. Without describing in detail the two devices, it is enough to say that when put to use the operation of the device used by the defendants is that an insulating material is placed under compression, while in the complainant's device it is placed under tension. The result is that the device used by the defendants appears to be stronger and better adapted to resist strain than the device of the complainant. But we cannot find that it is functionally different. It effects the same result by substantially the same method. The fact that the construction used by the defendants improves the construction of the complainant does not tend to prove that it does not infringe; in fact, it must infringe before it can improve. In the recent case of Electric Smelting Company v. Reduction Company (C. C. A.) 125 Fed. 926, Judge Coxe says:

"If the inventor produces a new and useful result, he does not lose his reward because he or some one else subsequently renders it more useful."

In the case at bar we find the defendants using a device which both infringes and improves the complainant's device. It is not necessary to decide whether the defendants themselves have effected the improvement, or whether they are using an improvement that some one else has invented. It seems clear to the court that there has been an infringement by the defendants of the patent in suit. We conclude that the patent is valid, and that it has been infringed.

A decree is to be entered for complainant for an injunction and for an accounting.