PENN ELECTRICAL & MFG. CO. v. CONROY et al.

(Circuit Court, W. D. Pennsylvania. October 23, 1905.)

No. 16.

PATENTS—INFRINGEMENT—MIRRORS.

　　The Wright & Curry patent, No. 631,033, for a mirror, construed, and *held* not anticipated, valid, and infringed as to claims 3, 4, 5, and 6.

In Equity. On final hearing.

Joseph M. Nesbit, for complainant.
Christy & Christy, for respondents.

BUFFINGTON, District Judge.   This bill in equity, brought by the Penn Electrical & Manufacturing Company against John M. Conroy and others, charges infringement of claims 3, 4, 5, and 6 of patent No. 631,-033, for a mirror, granted August 15, 1899, to John A. Wright and James H. Curry, assignors to complainant.   Validity of the patent is not questioned, and the sole issue is infringement.   This is alleged in exhibits numbered from 1 to 6, respectively.   The validity of the patent having been sustained in a suit in the Northern District of Illinois (reported in 121 Fed. 83, 57 C. C. A. 334, Regent Manufacturing Company v. Penn Electrical & Manufacturing Company), this court, declining to pass at that time on the other exhibits, granted a preliminary injunction, enjoining the manufacture of No. 6.   The case now comes for final hearing.

The expressed object of the patent in suit was to provide a mirror "mounting in the form of a folding frame," and "means for securing the mirror in its mounting," so that the frame could be used "either on a stand or easel, for supporting the mirror on a dresser, or, when compactly folded, as a handle, for constituting the mirror a hand glass." The device is best explained by the figures in the patent, herewith accompanying; No. 1 showing its use as a hand glass, and No. 3 as an easel:

The claims here in question, rejected by the patent examiner, were on appeal allowed by the examiner in chief, whose action is recited and approvingly commented upon by the Circuit Court of Appeals in the case above referred to, as follows:

"The board of examiners in chief unanimously reversed the decision, saying, among other things: 'The frame of Ritter is not adapted without change to support the clamps of Heineken. This device is one clearly an improvement over Ritter's, and contains novelty which is more than the result of merely copying or using an old device in the place of Ritter's prongs and holes.' So the applicants never acquiesced in the examiner's action, the examiner did not require the amendment as a condition precedent to the allowance of claims narrower than originally made, and the appellate tribunal allowed the claims after examining the device, in the spirit that giveth life."

An examination of these references satisfies us also of the correctness of this action of the board. The device has proved a decided commercial success. During the first year (1899), over 100,000 of the patented mirrors, in 1900, over 126,000, and in 1901, over 150,000, were sold by complainant, while up to the time this suit was begun (February, 1904), upwards of 2,000,000 of them had been marketed. It is obvious, also, that the device enables a manufacturer to use a large amount of small pieces of plate glass, which would be useless except for cullet. Due examination of the prior art does not disclose any unitary structure, composed of a mirror frame and holder, in which a piece of glass without mounting in a frame was used as a hand mirror. It is true the prior art showed the separate, individual elements of an unframed beveled edged mirror, of a spring-armed supporting frame or stand, and of spring grooved releasing clips adapted to be mounted in the arms of a supporting frame; but this invention consisted in uniting such separate, individual elements into a single, co-operating, unitary structure, which was new in the art. In that regard we concur in the views expressed by Judge Baker in the case referred to, wherein he says:

"Was a patentable combination formed by bringing together these old elements—an unframed mirror, with beveled edges, a spring-armed supporting frame, and grooved clips, adapted to be rotatably mounted in the arms of the frame? * * * Thus, by the co-operation of the three old elements is produced a unitary result, the quick, easy, and sure adjustability of the mirror with respect to height and angle. The improvement is confessedly novel. Its utility, apparent on its face, is reaffirmed by its great success. But did the production of it require the exercise of the inventive faculty? The conjunction of its being a true mechanical combination, its novelty, its great utility, and its notable commercial success, is persuasive that more than mechanical skill was required in taking this new step in the very, very ancient art of supporting and adjusting mirrors. The device seems exceedingly simple. But its very simplicity in such an old field should be a warning against a too ready acceptance of the ex post facto wisdom of the bystander."

Turning now to the question of infringement, we consider Exhibit No. 5 with reference to claim 3. The elements of that claim are: (1) Glass. (2) A spring metal frame, normally narrower than the glass. (3) Clips grooved on their inner edges, and having fixed, rotatable mounting in the frame sides. (4) The grooved clips being also adapted, on expansion of the frame, to embrace and fractionally hold opposite edges of the glass at any desired point in the length of the latter. In the alleged infringing Exhibit No. 5, respondents make, before the glass is inserted in it, a square metal laterally-flexible frame. Its sides are so tightly locked together by an M-shaped spring that the normal width between the grasping clips is narrower than the glass to be inserted.

These clips are grooved on their inner edges, have rotatable mounting in fixed engagement with the frame sides, and, upon the expansion of the frame to insert the glass, engage and frictionally hold its opposite sides at any desired point in its length. It will thus appear that, with the frame thus made narrower than the glass to which it is to be applied, the device embodies each element of the third claim, and when it is sprung open, to receive the wider piece of naked glass, all its elements co-operate in the same way, by the use of the same mechanical principles of spring and friction, to hold such glass for the same purpose as does complainant's device. It is true respondents' device shows the element of an M spring uniting the clips, the effect of which is, when the frame is in a normal condition, to spring the side arms in, and make the frame narrower than the glass. We, however, find nothing in the art which requires us to read into the claim the means by which a spring force is imparted to the springing frame. In the absence of any limitation in that regard in the claim, it would seem a mere choice of mechanical means whether the spring force is due to the resiliency of the spring arms themselves, or to a subsidiary agency, which imparts resiliency to them. The respondents' device, then, containing all the elements of the claim, why should it not be held to infringe? Because, it is alleged, the claim cannot, in view of the use of the Curry mirror prior to the patent in suit, be given a broad enough construction to cover respondents' device. We cannot accord any such effect to this Curry mirror. It consisted of a spring wire holder, provided with inwardly grooved clips. This holder was normally narrower than the glass. Its spring outward allows the mirror to be inserted, and the spring inward thereafter holds the mirror in place. The spread of the wire, its retractile force, and its grip on the glass in no way affected or were affected by the supporting frame in which it was afterwards placed. It (the frame) simply formed a unitary, individual structure, which gripped the glass. The ends of the wire were lugs or pivots, which were inserted into holes in the frame, when it was sprung to receive such wire ends. There was no fixed engagement between the frame which held the glass and the standard in which the frame was pivoted. The clips or holding wire had no "fixed, rotatable mounting in the frame sides" which the patented device has, and which is one of the elements of the claim in question. This element is one which makes complainant's device a unitary, co-operating one. In both complainant's and respondents' device, when the arms are sprung apart, the glass is released from the clutch of the clips, but in Curry's device such is not the case. In that respect the Curry device is the same as Ritter's, which, as held by the patent office, was a different type of structure. The Curry device, therefore, does not infringe the claim, and its prior use is not an anticipation. That this element of the claim—that of a "fixed, rotatable mounting in the frame sides"—is an element of substantial importance in the device is shown by the fact that in the patent No. 733,162, which respondents obtained for their device, they say: "The lug 5 is adapted to make engagement with the standard, being preferably pivoted to the standard."

In view of the infringement shown in Exhibit No. 5, it follows that Exhibits No. 1, 2, 3, and 4 also infringe, and while No. 6 is seemingly different in form, yet analysis of its construction shows that it embodies each and every element of the claim. The lug of the clip is located at its inner, instead of its outer, end, and instead of being pivoted in the supporting frame, that member is pivoted in it. To us these are mere alternative forms of construction. Being of opinion the device of the patent was of merit and value, and that respondents' devices infringe, a decree will be entered so holding.