CONROY et al. v. PENN ELECTRICAL & MFG. CO.

(Circuit Court of Appeals, Third Circuit.  September 5, 1906.)

No. 29.

PATENTS—INFRINGEMENT—MIRRORS.

> The Wright & Curry patent No. 631,033, for a mirror is not so limited by the prior art as to require it to be given a narrow construction and is entitled to a fair range of equivalents.  Also, *held* infringed.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

For opinion below see 140 Fed. 872.

Bayard H. Christy and George H. Christy, for appellants.
Edward Rector and Joseph M. Nesbit, for appellee.

Before DALLAS and GRAY, Circuit Judges, and LANNING, District Judge

LANNING, District Judge.  This appeal brings before us the final decree of the United States Circuit Court for the Western District of Pennsylvania awarding to the appellee (the complainant in that court) an injunction against the appellants (the defendants there) to restrain the latter from an alleged infringement of the Wright & Curry patent No. 631,033, dated August 15, 1899, for improvements in mirrors.  The Circuit Court held that the defendant had infringed claims 3, 4, 5, and 6 of the patent by the manufacture and sale of the six kinds of mirrors, samples of which were offered in evidence and distinguished in the record as Exhibits Nos. 1, 2, 3, 4, 5, and 6.  The patent was sustained by the Circuit Court of Appeals of the Seventh Circuit in Regent Manufacturing Company v. Penn Electrical & Mfg. Co., 121 Fed. 80, 57 C. C. A. 334.  In the present case, the assignments of error relate only to the question of infringement.  In discussing this question, counsel have directed our attention to the prior art, in its bearing upon the construction that should be given to the patent in suit, and also to the character of the mirrors manufactured and sold by the defendants.

The application for the patent was filed February 4, 1899.  In the specification the patentee declares that the invention described therein relates to mirror mountings, and that its objects are "to provide a mounting in the form of a folding frame which may be utilized either as a stand or easel for supporting the mirror on a dresser, or, when compactly folded, as a handle for constituting the mirror a hand-glass," and "to provide improved means for securing the mirror in its mounting."  The claims alleged to be infringed are as follows:

"(3) In a mirror, the combination of a glass, a spring-metal frame normally narrower than the glass, clips grooved on their inner edges and having fixed rotatable mounting in the frame sides, the grooved clips being adapted upon expansion of the frame, to embrace and frictionally hold opposite edges of the glass at any desired point in the length of the latter, substantially as shown and described.

(4) In a mirror, the combination of a glass, an expansible spring-metal frame normally narrower than the glass, and clips on opposite sides of the frame adapted, upon expansion of the frame, to embrace and frictionally engage opposite edges of the glass at any desired point in the length thereof, whereby the relative position of the glass and frame may be varied, substantially as shown and described.

(5) In a mirror, the combination of a glass having its edges continuous and uninterrupted by apertures or other bearing-points, an expansible spring-metal frame normally narrower than the glass, and clips grooved in the direction of the glass edges, said clips secured to opposite sides of the expansible frame and adapted to embrace the glass edges at any desired point in the length thereof, the clips holding the glass by frictional engagement, substantially as shown and described.

(6) In a mirror, the combination of a glass having beveled or tapering edges, a frame, clips for securing the glass to the frame, the clips having V-shaped sockets for embracing the back and bevel of the glass without encroaching on the reflecting-surface thereof, and means for frictionally holding the clips at any desired point on the glass edges, the latter having wedging action in the clip-sockets, substantially as shown and described."

The figures illustrating the patent may be found in the opinion of the Circuit Court rendered in this case and reported in 140 Fed. at page 873. It will be observed that claim 3 of the patent is for a combination of three elements, viz.: (1) a glass; (2) a spring-metal frame normally narrower than the glass; and (3) clips grooved on their inner edges and having fixed rotatable mounting in the frame sides, the grooved clips being adapted, upon expansion of the frame, to embrace and frictionally hold opposite edges of the glass at any desired point in the length of the latter.

The record of the case shows that the Curry mirrors, samples of which were offered in evidence, were made and sold in 1892 and 1893, six years, or more, before the patent in suit was applied for. With each of these mirrors there is, extending across the back of the mirror, a wire bent into a V shape, or such other shape as to permit of lateral expansion and being also, at the opposite edges of the glass, so bent as to form two clips into which the glass on expansion of the wire may be inserted and held. The ends of the wire, also, protrude laterally beyond the clips and the outer edges of the glass and fit into sockets drilled in the frame that surrounds the mirror. When the bent wire is expanded so that its clips may receive the glass, the resiliency of the wire causes its clips to grip and hold the glass. When the frame is expanded so that the sockets in its sides may receive the ends of the wire, the resiliency of the frame keeps the ends of the wire imbedded in the sockets. When the several parts—the glass, the wire and the frame—are thus adjusted, the wire may be turned about in the sockets so as to put its embraced glass in a vertical or in any desired inclined position. When the frame is expanded, both the glass and its embracing wire are released. When the embracing wire is expanded the glass only is released. We think this description of the Curry mirror

shows, notwithstanding the contention of the learned counsel for the defendants, that it is not provided with clips "having fixed rotatable mounting in the frame sides," and that the clips are not "adapted, upon expansion of the frame, to embrace and frictionally hold opposite edges of the glass." Giving to the word "frame" the meaning which a reasonable construction of the patent in suit requires, it seems to us that the embracing wire of the Curry mirror, which alone is provided with the clips, is no part of the frame, that the clips are adapted, upon expansion of the embracing wire, and not upon expansion of the frame, to receive and frictionally hold opposite edges of the glass, that the embracing wire as a whole, and not the clips, is rotatable in the frame sockets, and that the expansion of the frame serves the purpose, not of enabling the clips to embrace the glass, but of enabling the frame to receive into its sockets the ends of the wire which embraces the glass.

The invention described in the Scheurich patent, No. 236,845, dated January 18, 1881, is one in which the glass is held in position by a mechanism on the back of the glass consisting of a center-piece, the clips at the edges of the glass, and spring-cushioned rods connecting the center-piece with the clips. Neither is the device described in this patent provided with clips which have fixed rotatable mounting in the frame sides.

In our judgment, neither the Curry mirror nor the Scheurich patent discloses such a state of the prior art as requires the narrow construction of the language of the patent in suit for which the defendants have contended.

The record of the case further shows that after the patent in suit had been granted, and in the year 1900, the defendants began to manufacture and sell a mirror known in the market as the "Conroy Mirror." This mirror was clearly a combination of (1) a glass; (2) a spring-metal frame normally narrower than the glass; and (3) clips grooved on their inner edges and having fixed rotatable mounting in the frame sides, the grooved clips being adapted, upon expansion of the frame, to embrace and frictionally hold opposite edges of the glass at any desired point in the length of the latter. The complainant complained of the sale of this mirror by the defendants and about January, 1901, they discontinued its manufacture and sale as theretofore constructed and later settled with the complainant for the infringement. Almost immediately, however, the defendants began to make and put upon the market another mirror which the complainant insists was identical in all respects with the Conroy mirror save that the inner edges of the two clips were so turned on the back of the glass as to form hollow cylinders into which the legs of an M spring could be inserted or removed as desired. This latter mirror is designated in the record as Exhibit No. 1, and is one of the six mirrors the manufacture and sale of which were enjoined by the decree of the court below. Mr. Conroy, one of the defendants, insists that the Conroy mirrors proved to be unsatisfactory because the resiliency of the frame was not sufficient to hold the glass securely in place, and that the addition of the M

spring in Exhibit No. 1 cured this defect by causing the glass to be held firmly in position, not by the resiliency of the frame, but by the resiliency of the M spring. The contention of the defendants is that by the introduction of the M spring they have brought into their combination an element not mentioned in the patent in suit, that they have no need of and do not employ in their combination a resilient frame such as is described in the patent in suit, and that the M spring used by them is in substance the old device of the Curry mirror or of the Scheurich patent.

We have given to this contention careful consideration, but we are forced to the conclusion that the proofs do not support it. The frame of Exhibit No. 1, as demonstrated on the hearing by actual inspection and trial of that exhibit, possesses sufficient resiliency to hold the glass in position, even when the M spring is removed or when it is cut in two so as to destroy its function as a spring. Nor is noninfringement established by the mere fact that the arms of the frame may be put so wide apart in their manufacture that they cannot grip the glass and that, in such case, the M spring gives to the frame as a whole the resiliency necessary to hold the glass in its place. In such a case the M spring becomes merely a mechanical equivalent, performing the same office and producing the same result performed and produced by the arms of the frame when so manufactured as to be in the normal position described in the patent. In Water Meter Company v. Desper, 101 U. S. 332, 25 L. Ed. 1024, it is said:

"It is a well-known doctrine of patent law that the claim of a combination is not infringed if any of the material parts of the combination are omitted. It is equally well known that if any one of the parts is only formally omitted and is supplied by a mechanical equivalent performing the same office and producing the same result the patent is infringed."

Besides, the insufficiency of such a contention is well pointed out in the Regent Manufacturing Company's Case, where the court said:

"But if the construction of the claims be adopted that the naked spring-arms, when free from pressure, must stand nearer each other than the width of the glass, then an infringing mirror may be made noninfringing by bending the spring-arms a hundredth of an inch, and vice versa, and the same mirror may at one moment infringe and not at the next. Verily, this would be an instance in which the letter killeth."

We think Exhibit No. 1 possesses all the elements of the combination described in claim 3 of the patent in suit, and that the addition of the M spring does not result in a combination different from the one described in that claim.

Exhibits 2 and 4 are not distinguishable from Exhibit No. 1. Exhibits 3 and 5 are distinguishable only by having the legs of the M spring soldered fast to the cylindrical holes in the ends of the clips. No material change in the combination is thereby made. Our opinion, therefore, is that the Circuit Court was right in awarding an injunction against the manufacture and sale of Exhibits Nos. 1, 2, 3, 4, and 5.

But the injunction should not apply to the mirror designated as Exhibit No. 6. In that mirror there are a glass and two clips, into the ends of which clips back of the glass, the two ends of a bent wire

are inserted. This wire, which by its resiliency causes the clips to grip and hold the glass and serves also as an easel for the glass, is wholly concealed back of the glass. There is no wire or any other material surrounding or partially surrounding the glass. Aside from the glass, the upper edges of the clips only are seen as one looks into the mirror. For these reasons we think this mirror has no "frame" in the sense in which that word is used in claim 3.

Claims 4, 5 and 6 do not differ in their essential features, so far as the decision of this case is concerned, from claim 3, and no discussion of them is necessary.

Our conclusion, therefore, is that the decree of the Circuit Court should be affirmed in all respects save that in the last two lines of its first paragraph the words "defendant's mirrors Nos. 1, 2, 3, 4, and 5, and each of them" should be substituted for the words "defendant's mirrors Nos. 1, 2, 3, 4, 5, and 6, and each of them."