STUBER et al. v. CENTRAL BRASS & STAMPING CO.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1915.)

No. 2101.

1. PATENTS ☞26—"PATENTABLE INVENTION"—UNITING PARTS OF PRIOR DEVICE.

The uniting of the separate parts of a device in one does not amount to "patentable invention," unless it accomplishes a new result.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. ☞26.

For other definitions, see Words and Phrases, First and Second Series, Invention.]

2. PATENTS ☞328—VALIDITY AND INFRINGEMENT—HOSE-JOINER.

The Paradice patent, No. 758,099, for a hose-joiner, was not anticipated, and discloses patentable invention; *held* infringed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Northern Division of the Southern District of Illinois; J. Otis Humphrey, Judge.

Suit in equity by Joseph Stuber and Henry G. Kuck against the Central Brass & Stamping Company. Decree for defendant, and complainants appeal. Reversed.

D. W. Evans, of Peoria, Ill., for appellants.

W. V. Tefft and John M. Elliott, both of Peoria, Ill., for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge. Appellants filed their bill to restrain appellee from infringement of patent No. 758,099, issued to F. H. Paradice April 26, 1904, for a hose connection, and assigned to them. The only claim of patent reads as follows, viz.:

A hose-joiner complete in one article consisting of an inner tube with enlarged spigot ends for insertion into hose to be joined, and an outer portion or shell which will surround the hose to be joined; the edges of said portion forming circles which are greater in diameter than any other part of the joiner and set at an angle relative to the longitudinal side of the inner tube of from 1 to 90 degrees and being slotted, substantially as set forth.

The device of the patent covers a method of uniting two sections of hose. Combined figures 1, 2, and 3 of the drawings of the patent are herewith reproduced:

The patent was held to be invalid by the District Court, which dismissed the bill for want of equity.

Appellee denies both validity of the patent in suit and infringement. By amendment to answer it sets up estoppel of appellants to assert infringement, upon the following state of facts: That prior to the filing of the bill, appellants licensed one L. R. Nelson and his assigns to manufacture hose couplers and menders under an application which afterwards eventuated in the issuance of letters patent, No. 946,703, to said Nelson and to appellants, the latter having obtained a one-half interest therein before issue, which license contract was assigned to appellee, who "is and always has been manufacturing all of its hose couplers and menders by the license of the complainant." The license contract, referred to in the amendment to the answer aforesaid, is set out, in substance, in the opinion of this court in case No. 2120, wherein appellee herein was complainant and appellants were defendants below,

herewith decided. For reasons stated in that opinion, we held that that contract was not assignable, and that appellee herein took no right thereunder, by reason of the attempted assignment, to manufacture the device of the Nelson patent. That being so, appellants are not estopped thereby from asserting infringement of the Paradice patent by appellee's use of the device of the Nelson patent. Both the answer and the evidence established the fact that the alleged infringing device was that of the Nelson patent. The device of the patent in suit will be readily understood from the drawings.

"The manner in which this mender is attached," says the patentee (line 82, p. 1), "is as follows: The end of the tube [3] is forced into the hose [6], the spigot causing the hose to expand and as it passes the spigot to contract, as shown at Fig. 2. The other end [of the tube] is then forced into the other section of hose which is to be joined. Then the points of the menders are hammered down as indicated at Fig. 3. When hammered down, the mender assumes the form as shown at Fig. 1."

The idea of the use of clamping fingers upon hose connecting devices was not new with Paradice. He had himself, as early as July 24, 1899, conceived a hose ends connector, which seems to have differed from the patent in suit mainly in providing the inner tube *3* with the spigot or enlarged ends shown in the present device, whereby there is presented a shoulder against which the ends of the fingers *2* abut when forced down upon the hose end. In the earlier patent the fingers simply clamped the hose end upon the inner tube, which was of even bore and exterior, and without any spigot end or other feature calculated to assist the fingers in clamping the hose end onto the inner tube. The use of fingers is also found in several patents of the prior art, as in Levering patent, No. 28,544, issued May 3, 1898, where four so-called fins are shown, and Wise patent, No. 631, issued in 1881, showing a somewhat indistinct means of holding the hose ends in place. The record discloses so little concerning this Wise patent that we are unable to determine its value as an anticipation. The drawings and the evidence are insufficient to that end. Dayton patent, No. 164,816, issued June 22, 1875, shows the hose ends clamped by an annular ring, as does Kennedy patent No. 213.577 Some of the patents show the inner tube roughened or screw-threaded to prevent slipping off of the hose ends, as in Kempshall patent, No. 512,252, of January 2, 1894, where two arms or fingers are used. The nearest approach to the patent in suit is found in patent No. 714,243, issued to Sargent November 25, 1902, for a hose coupling, in regard to which the patentee says (line 17, p. 1):

"The invention consists in a shank preferably tapered from the center toward the ends and provided with a centrally-disposed annular rib and adapted to be inserted into the adjacent ends of the hose-sections and two collars engaging the shank on opposite sides of the rib and with lugs spaced apart and extending in opposite directions and preferably interlocking and adapted to be forcibly engaged with the opposite hose sections."

[1, 2] The two collars, formed at the several ends of the tapered shanks, appear from the drawings to be little larger in diameter than the hose ends; so that when the hose ends are forced over them onto the upward tapering exterior of the shank, the hose shows little en-

largement therefrom. In operation, the shank is provided with two independent pieces, termed "collars" in the patent. One of these is slid over the hose end. Then the end is thrust over the one of the two ends of the shank adjacent to and along the upward slanting arm of the shank to a point near the center. Then the collar is slipped over the beaded end of the shank arm until it crowds the hose end, much distended, against a central rib which encircles the center portion of the shank. Then the other end of the shank is similarly dealt with. These two collar pieces carry integrally spaced lugs or large fingers which interlace with each other. These lugs are then crowded down until the depending spurs at the end of the lugs are driven into the portion of the rubber hose opposite the collar of which the lug is an integral part, thus forming cross-holds both for the collars and the hose ends. It will be seen that this device is formed of three parts, viz., the shank and the two collars; whereas the device of the patent in suit consists of one integral article. Ordinarily it is not invention to unite the several parts of a device in one. Unless, therefore, some new result is accomplished in doing so, the combination of the three elements of Sargent's hose-mender into one would not, in a patentable sense, amount to invention.

It is appellee's contention that Paradice has simply combined the three parts of Sargent's device in rigid union as one implement. Several advantages over Sargent are said by appellants to be attained by their mender: (1) The substitution of one object for three effects very considerable advantage in handling and using, both in trade and in practice. (2) The Sargent lugs or finger ends do not crowd and hold the hose against the collars or buttons on the ends of the shank, thereby giving a firm grasp, as in Paradice patent, but, on the contrary, depend for strength upon the bite of the spurs of the lugs or fingers, on the hose, which, at the point where they are applied, to wit, about one-half of an inch from their ends, is much attenuated by being drawn up over the enlarged center part of the shank. (3) The centrally arranged collars of Sargent are held together by the interlaced lugs which are carried by the two collar pieces, respectively, whereas the lugs or fingers of the patent in suit are carried by collars or rings which are rigidly attached to each other, and which receive no considerable help from the fingers. (4) Although Sargent says (line 12, p. 2), "Any required number of the lugs *18* may be employed, but generally four will be sufficient, as shown," yet it is apparent, from the fact that the lugs are much larger at their line of union with the collars than at their outer ends, that the fingers do not entirely surround the hose, as in Paradice, since their ends are widely separated. These propositions we find to be supported by the evidence.

From the foregoing enumeration of the patents of the prior art, it will be seen that Paradice, in the patent in suit, made provision for conditions which the prior patents of the Sargent type do not cover, especially in these respects, viz.: That his device is a unit; the enlargement of its collars at the ends of the even-bored shank; the close arrangement of its fingers forming an uninterrupted band about the

hose; and the firmness with which the fingers sink into the hose back of the end collars and abut thereon. All these are new in Paradice. Taking, therefore, into consideration the foregoing advantages, together with the presumption arising from the grant, we hold it to be a valid patent.

The alleged infringing device as manufactured by appellee is, as above stated, the device of the Nelson patent. It is clearly disclosed in Fig. 1 of the drawings of the Nelson patent here reproduced.

Nelson says, in the specification to this patent, that one object of the patent—

"is to construct a hose coupling of sheet metal and formed tubing whose members, though of separate parts, can be assembled as a single complete article, the parts of which are inseparable."

At line 74, p. 2, the specification reads:

"The connector is distinguished from the prior art in having enlargements or heads at its ends greater in diameter than the body of the tube and in having the spurs of the fingers lying just behind them so that the hose ends after being stretched or forced over said enlargements or heads and contracting to their normal diameters upon the body, will be engaged by the spurs."

In practice, the Nelson patent is a unitary device. Nelson made his hose mender in two parts or finger bearing collars, and then placed the two between the ribs G raised on the tube near its middle. Paradice also made his mender in two parts or collars, likewise carrying fingers integral therewith.

The foregoing is sufficient to show that the Paradice and Nelson devices are, for the purposes hereof, the same, the only difference being that Nelson's is made of sheet metal, sometimes with formed tubing, and has spurs upon the ends of its fingers. These latter were old in the art, and are found in Sargent and other patents.

Appellee was, at the time this suit was begun, infringing the patent in suit, and appellants are entitled to the relief prayed for. The decree of the District Court is reversed, with direction to sustain the patent in suit and decree infringement thereof by appellee.