### In re JOHNSON.

(Court of Appeals of District of Columbia. Submitted November 14, 1923. Decided February 5, 1924.)

No. 1589.

1. Patents ⬤⟹17—Snap clamp for tapping electric line conductors held invention.

A snap clamp for tapping electric line conductors, having opposed jaws of like gripping area, one of which jaws is a multiple jaw with the members independently movable toward and from the other jaw, *held* to disclose a unitary advance over the former art by way of invention, and not mere mechanical skill.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Patents ☞32—Doubt resolved in favor of applicant, where distinct advance made.**

Where a distinct advance has been made in a given art, and the question of invention is close, it will be resolved in favor of the applicant, especially where his claims are specific.

Appeal from the Commissioner of Patents.

Application for patent by Tomlinson Fort Johnson, Jr. From a decision rejecting applicant's claims, he. appeals. Reversed and remanded.

E. G. Siggers, of Washington, D. C., for appellant.

Theodore A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and MARTIN, Presiding Judge of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice. This is an appeal from a decision of the Commissioner of Patents, rejecting 13 claims of the application. Six of these have been withdrawn by the applicant, leaving claims 1, 2, 5, 6, 9, 11, and 13 still in question. Claims 1, 6, and 11 are copied as sufficiently illustrative:

1. A snap clamp for tapping electric line conductors, having opposed jaws of like gripping area, one of which jaws is a multiple jaw, with the members independently movable toward and from the other jaw.

6. A snap clamp for tapping electric line conductors, comprising two opposed jaws hingedly connected with one jaw having a normal constraint toward the other, and said jaw being composed of a plurality of members, with meeting edges extending lengthwise of the jaw, and each member being independently elastically yieldable away from the first-named jaw.

11. A snap clamp for tapping electric line conductors, comprising two jaws hingedly connected together, one jaw being an effectively one-piece jaw, and the other jaw comprising two separate members, each yieldable and independently constrained toward the first-named jaw, the separate members of the second-named jaw having longitudinal meeting flanges at their meeting edges projecting away from the face of the jaw, and the first-named jaw having guide fingers at its side portions, embracing those edges of the second-named jaw remote from the flanges.

[1] The device covered by the appealed claims is a snap clamp designed to fit tightly upon any high-tension transmission wire, so as to tap the line by grounding the electric current through a branch conductor connected with the clamp. The chief service of the device is to make that part of the transmission line which is beyond the clamp safe for workmen when engaged in removing or replacing .insulators thereon. The clamp is fastened upon the end of a pole which is carried by the operator, by means of which it may be snapped over an overhead wire and wrenched free again after use. The clamp is made of metal, having one rigid or stationary jaw, to which are hinged at one end two opposing jaws having a combined area equal to that of the first-named jaw. Each of the hinged or movable jaws is pressed against the stationary one by means of a separate spiral spring. The pressure of each spring upon its movable jaw is exerted through a metal rod, which projects through the spring and through both jaws, having a

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

head at one end bearing against the spring, and at the other end a number of holes, through any one of which a pin may be passed to bear against the stationary jaw. Different degrees of spring pressure may be secured by an adjustment of these pins. The stationary jaw carries a pair of arms to keep the movable jaws in alignment, and carries also the socket into which the branch or grounding conductor is soldered. The movable jaws have a straight inner edge of two flanges abutting one another. These are wide at the hinge end, and are narrowed at the free end, being rounded at their outer edges, so as to prevent injury to the transmission wire to which the clamp may be attached.

It appears from the references that in the years 1912 and 1917 the present applicant secured patents upon certain snap clamps, which were similar to this in character, except for the feature of the double or divided hinged or movable jaws of the present device; the former inventions having but a single movable jaw. That jaw, however, was pressed against the stationary jaw by means of a spiral spring, substantially as in the present device. Upon these and other references the claims of the applicant were successively rejected by the Primary Examiner, the Examiners in Chief, and the Commissioner, who held in effect that the applicant had incorporated into the present device merely such features as were old in the art, or such variations thereof as were produced without the exercise of invention.

We are constrained to disagree with this decision, and to approve the claims of the applicant. The provision in this device for two independently movable jaws, each forced toward the opposite jaw by an independent and adjustable spring, is a novel and useful construction, which is not shown or suggested in the former patents, nor any of the references, and by means thereof new functions and increased efficiency and utility have been produced. This device enables the clamp to carry a much heavier electric current before melting the solder as compared with the earlier clamps, without increase of weight or cost. It is true that multiple jaws designed to improve electric contacts are not new in the art; but in this case, however, other novel results are produced. The clamp is made capable of being snapped on or off of the line more easily and quickly than formerly, since one spring jaw at a time may now be twisted sidewise, either on or off of the wire, by the operator, thereby requiring much less effort. This is an important quality, in view of the hazardous position of the operator when applying the clamp; also, when snapped over the line, this clamp automatically indicates by the alignment of the movable jaws whether it is properly seated on the wire. Again, it may be applied to the line at greater angles than the former clamps, thus increasing the safety and efficiency of its operation, and because of the several holding springs it may the better be adjusted to the varying diameters of line conductors. These qualities disclose a unitary advance over the former art by way of invention, and not mere mechanical skill only. Regent v. Penn, 121 Fed. 80, 57 C. C. A. 334; Canda v. Michigan Malleable Iron Co., 124 Fed. 486, 61 C. C. A. 194; Buchanan v. Perkins, 135 Fed. 90, 67 C. C. A. 564; General Electric Co. v. Yost Electric Mfg. Co., 139 Fed. 568, 71 C. C. A. 552; Stuber v. Central Brass Stamping Co., 224 Fed.

712, 140 C. C. A. 252; Loom Company v. Higgins, 105 U. S. 580, 26 L. Ed. 1177.

[2] We refer also to the well-established rule that where, as in this case, a distinct advance has been made in a given art, and the question is close, it will be resolved in favor of the applicant, especially where his claims are specific. In re Eastwood, 33 App. D. C. 291; In re Harbeck, 39 App. D. C. 555; In re Katzenberger, 46 App. D. C. 539; In re Glafcke, 51 App. D. C. 204.

In our view, the claims of the applicant should have been allowed. The decision of the Commissioner is therefore reversed, and the case is remanded accordingly.