### BUCHANAN et al. v. PERKINS ELECTRIC SWITCH MFG. CO.

(Circuit Court of Appeals, Third Circuit. February 7, 1905.)

#### No. 16.

PATENTS—VALIDITY AND INFRINGEMENT—INCANDESCENT LAMP SOCKETS.
  The Perkins patent, No. 626,927, for an incandescent lamp socket, was not anticipated, and is not for a mere aggregation of parts, but covers a true combination of old elements into a new and complete unitary structure in such a way as to produce a new and highly beneficial result, and to show invention. Claims 3, 4, and 9 also *held* infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 129 Fed. 134.

Marcellus Bailey, for appellants.
Hubert Howson, for appellee.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

GRAY, Circuit Judge. This is an appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania. 129 Fed. 134. The appellee brought suit by a bill in equity against the appellants, for infringement of claims 3, 4 and 9 of letters patent No. 626,927, granted June 13, 1899, to the appellee, as assignee of Charles G. Perkins, for improvements in incandescent lamp sockets. The decree of the court below sustained claims 3, 4 and 9 of the patent in suit, and found the defendants to have infringed the same. The claims involved are as follows:

"(3) In combination in a lamp-socket, a cap, a shell, two blocks of insulating material with recesses arranged to form two insulating-chambers, a plate with a binding-screw located in one of the chambers and having its ends secured to the respective blocks, a plate with a binding-screw located in the other of the chambers and having its ends secured to the respective blocks, and

grooves in the edges of the upper block for the passage of the circuit-wires of the respective binding-screws, substantially as specified.

"(4) In combination in a lamp-socket, a shell, two blocks of insulating material with recesses arranged to form insulated chambers, a plate with a binding-screw located in one of the chambers, a plate with a binding-screw located in the other of the chambers, and a switch-block located in one of the chambers and adapted to make contact with the end of the plate in the same chamber, substantially as specified.

\*          \*          \*          \*          \*          \*          \*          \*          \*

"(9) In combination in a lamp-socket, a cap, a shell, two blocks of insulating material located within the shell, insulated chambers formed by recesses in the insulation, and plates bearing outwardly-extending binding-screws located in the recesses and having their ends secured by screws to the respective insulating-blocks, substantially as specified."

The defenses set up were nonpatentability, for lack of invention, and noninfringement. The first, viz., nonpatentability, was the most seriously urged, and was and is the controlling issue in this case. The patentee says, in regard to the subject matter of his patent:

"This invention relates to a receptacle for incandescent lamps, having a switch mechanism enclosed in a chamber that is insulated from the shell and from the chamber containing the parts forming the other side of the circuit through the socket."

A trouble incident to all lamp sockets, and present to a greater or less extent in all the numerous devices prior to that of the patent in suit, arose from the juxtaposition of the poles or terminals of the circuit, owing to the necessarily confined space in which they were inclosed. The danger of short circuits, from contacts of the raveled ends of the wires inserted in the posts, and from arcing, was one that, according to the evidence, had only been imperfectly prevented in the sockets of incandescent lamps. That this danger was entirely eliminated or minimized by the device of the patent in suit, is not denied. The appellant, however, cites the prior art, not so much to prove anticipation of the device of the patent in suit, as to show that the state of the art was such, that the combination set forth in the claims was a mere step in the direction of increased efficiency of such lamp sockets as would readily suggest itself to one skilled in the art, and did not involve patentable invention.

Of the numerous patents and devices for incandescent lamp sockets prior to the patent in suit, only four have been cited by the defendant below, to illustrate the state of the art into which the lamp socket of the complainant below was introduced. These are the "Snow" patent, No. 554,896, dated February 18, 1896, the "Wirt" patent, No. 560,667, dated May 26, 1896, the "Hubbell" patent, No. 565,541, dated August 11, 1896, and the "Pass & Seymour" patent, No. 568,919, dated October 6, 1896. In each of these patents, except the "Pass & Seymour," the insulating discs of porcelain, in which the switch mechanism is placed and into which are brought the terminals or poles of the circuit, to be connected through the high resisting lamp filament, are covered by a thin metal case. In the "Snow" and "Hubbell" patents, it is only necessary to refer to the latter as more clearly demonstrating the advance of the art in the direction of the device of the patent in suit.

In both the "Hubbell" and "Snow" patents, the two discs of porcelain are separated and held apart for a distance of half to three-quarters of an inch, by the metal standards on their opposite sides, to which they are united by binding-screws. Grooves are made in the discs to hold the ends of the standards, and for the passage of the wires which connect with the standards as part of the circuit, the moving part of the mechanism being located in the open space between the upper and lower disc. In this type of lamp socket, there is nothing to prevent short circuiting, by the coming in contact of the raveled ends of the twisted cords constituting the terminals of the circuit on the opposite sides of the disc. Unskillful or careless connection of the ends of these cords with the posts, as shown by the evidence, makes this a frequent source of trouble in this type of lamp socket. So also, there is an ever-present danger of arcing of the current, upon sudden turning of the switch. Mr. Waterman, complainant's expert, testified that, within his "own experience, sockets of this general open type have given trouble continually from breaking of the porcelains, the loosening of the parts and consequent development of bad contacts and burning of the socket, from short circuits due to arcing, to loose strands of the circuit wires and to broken pieces falling so as to connect opposite poles."

It was to overcome these difficulties and produce a socket that would be "mechanically strong and electrically well insulated, so that the danger of short circuit" might be entirely obviated, as well as arcing between the opposite terminals prevented, that the lamp socket of the patent in suit was devised. That the patentee accomplished his purpose and furnished a socket, not only mechanically strong but electrically well insulated, and one that was small, light, simple, easily wired, and cheap to manufacture, is not denied, and is fully established by the evidence. This was accomplished by bringing the two porcelain discs of the "Hubbell" and "Snow" patents into close contact, and by thus shortening the electrically conducting standards which hold the two discs together, giving strength and solidity to the structure; the faces of the two porcelain discs being so recessed as that, when brought together, the recesses and partitions between them coincide, and forming separate and completely insulated chambers on opposite sides of the socket, into which the terminal wires are introduced.

The "Wirt" socket, which belongs to the single porcelain block type, was referred to principally to show the peripheral recesses on practically opposite sides of the porcelain block, to receive the two plates that carry the binding-screws, and clearly these peripheral recesses in the patent in suit are not new with reference to the "Wirt" patent. In other respects, however, the single block Wirt devised, is subject to the danger arising from the close juxtaposition of opposite poles of the circuit, where the central contact passes through the screw contact shell. The loose ends of the circuit wire are liable to make contact between the two, and so establish a short circuit.

The "Pass & Seymour" socket belongs, as said by complainant's expert, "to an entirely different class of constructions." It has no metallic case, but is entirely a porcelain construction. There is no cap or shell, and no two blocks of insulating material so fashioned as, when brought together, to form two insulating chambers. There is a little ridge in the single large chamber, marked 10 in the drawing of the patent, but this does not form two insulating chambers. Terminal wires are brought through apertures in the porcelain, directly into the binding posts located in the chamber, and any stray or raveled ends of such wires are liable to get over the ridge and make a short circuit with the opposite pole. The learned judge of the court below has, in our opinion, correctly and clearly stated the essential difference between the "Pass & Seymour" socket and that of the patent in suit, as follows:

"In the Pass and Seymour the ends of the circuit wires are left in close proximity in the same chamber with nothing but a low and narrow rib of porcelain intercepting them, which there is constant danger that the frayed strands may bridge over and short circuit. But in the Perkins this is doubly prevented; first, by locating the contact plates at diametrically opposite sides of the blocks; and second, by giving to each a separate recess or chamber therein. It is true that the wall between the chambers is slight, and that the imperfect contact of the upper and lower blocks leaves a small air space which divides it; and in a badly fitted socket, like that produced by Mr. McIntire, this may be so great as to do away in great part with the benefit to be derived from this construction. But in the ordinary and proper form made in accordance with the patent, the two chamber feature has an important and distinctive function which is not anticipated by anything to be found in the Pass and Seymour, any more than in the rest of the preceding art."

It is true that the elements of the combination, described in these three claims of the patent in suit, are in a sense old, yet the two perfectly insulated chambers, the dominating element of the combination, is in a sense new. It is not found in any of the patents cited, in such fashion as to produce the beneficial effects due to it in the combination of the patent in suit. With this and the other elements of the combination, we have a new and complete unitary structure, combining old elements in such way as to produce a new and highly beneficial result. Mr. Waterman, complainant's expert, thus describes what he calls the essential feature of the combination:

"The essential feature of the construction, in so far as claims 3, 4 and 9 are concerned, as I understand the patent, consists in the form of the insulating blocks and the disposition of the several necessary electrical contact portions in such manner that they are effectively separated from one another and serve to hold together the insulating pieces to make the interior mechanism and its insulation substantially a unit, exceedingly simple and strong in its construction, and successfully meeting the requirements of practical use. This is attained by the use of two opposed chambered insulating blocks united by plates, serving also as electrical connections, to form substantially separate enclosures, whereby conducting parts of opposite polarities are separated from one another in a substantially perfect manner."

Whether, in a given case, there has been an exercise of the inventive faculty, within the meaning of the patent laws, is always a delicate and sometimes difficult question addressed to the sound judgment of the court having to pass thereon. It is difficult, per-

haps impossible, to prescribe general rules for the exercise of this judicial function. It demands careful consideration of the prior art and the essential and distinguishing feature of the device or combination, as to which invention is alleged, and appreciation of the practical working of the mental faculties. But it must often happen, and is unavoidable, that what is evidence of inventive genius to one mind, may only suggest the exercise of mechanical skill to another equally sincere and intelligent.

The fact that a new combination or device may be simple and obvious to the ordinary understanding, when once produced in concrete form, is not necessarily proof that invention was not involved. This is almost a commonplace in the jurisprudence of patent law. It is also true that admitted benefits resulting from the combination or device, and widely extended adoption, are facts relevant to the novelty and usefulness of the alleged invention. These facts are abundantly established, in regard to the patent in suit, by the evidence in this record. The results attained by the device of the patent in suit are the prevention of short circuits, by stray wire ends from the flexible conductors making contact between the two branches of the electric circuit, the prevention of arcing in the opening of the switch, and a construction mechanically strong and compact, with the metallic parts well protected. We think the combination of which this device consisted, was the product of more than mere mechanical skill, and required such an exercise of the inventive faculty as the patent laws were designed to protect. As to the contention that the combination described in claims 3, 4 and 9 is a mere aggregation of parts, and not a patentable combination, we cannot do better than adopt the language of the learned judge of the court below:

"It is further urged that the elements drawn together in the patent amount to a mere aggregation; but this loses sight of that which is involved. The object of the invention is the production of an electric lamp socket, an important commercial appliance, which, to meet the demands upon it, must have certain characteristics and qualities. It is necessarily made up of different parts, designed for different purposes, some of which contribute one thing and some another. The cap, the shell, the upper and lower blocks, the insulating chambers are nothing apart and in themselves; but together they unite to form a complete socket to be taken and used as a whole. This is not an aggregation of separate elements, each acting or standing by itself, but a composite construction in which the several parts co-operate to produce a common and combined result which the law accepts and sustains."

The defense of noninfringement is not seriously urged by the learned counsel for appellant, who says in his brief, in regard to the defendant's structure as compared with that of the patent in suit,

"The only bond they have in common, which is not also found in the prior 'Hubbell' patent, is that the two legs or standards, which mechanically unite the two blocks and at the same time form part of the electric circuit, are separated from one another by an insulating wall or partition, formed by properly fashioning and recessing for this purpose the meeting faces of the two blocks."

While this statement takes no note of other features which the two structures have in common, not found in the prior "Hubbell"

patent, such as the bringing into close contact the two porcelain discs, fastened together externally by the two legs or standards let into external grooves in the porcelain, it does admit that the defendant's structure possesses the controlling characteristic of complainant's combination, viz., the perfect separation by an insulating wall of these two metallic standards and the opposite poles of the electric circuit, "by properly fashioning and recessing for this purpose the meeting faces of the two blocks."

We think, therefore, that claims 3, 4 and 9 of the patent in suit covered a patentable combination, and that the court below was right in sustaining the validity of the same. The decree of the court below is therefore affirmed.