## HOHLFELD v. PATTERSON.

### (District Court, E. D. Pennsylvania. July 10, 1914.)

### No. 935.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SETTEE HAMMOCK.
 The Hohlfeld patent No. 947,546, claim 23, for a settee hammock, was not anticipated, and covers a patentable, though simple, combination as applied to hammock construction; also *held* infringed.

In Equity. Suit by Herman L. Hohlfeld against James B. Patterson. On final hearing. Decree for complainant.

Horace Pettit, of Philadelphia, Pa., for plaintiff.
Augustus B. Stoughton, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The complainant sues to restrain the defendant from infringement of letters patent, No. 947,546, for an improved settee hammock, for which application was filed September 9, 1908, and letters patent issued January 25, 1910, and for an accounting of damages and profits arising by reason of the alleged infringement. The defendant denies infringement, and defends also upon the ground that the complainant's patent is anticipated by the prior art.

The complainant relies upon alleged infringement of claim 23, which is as follows:

"A settee hammock comprising a seat, a flexible end connected to each end of said seat, a flexible back connected to the rear of said seat, a spreader secured to the free edge of each of said flexible ends and to the free edge of said flexible back, means for detachably connecting the spreaders, and means connected to the end spreaders for suspending the hammock, and whereby said end spreaders are held detachably connected to said back spreader."

The defendant, to show anticipation, offered evidence that as early as 1902 E. L. Rowe & Son, Incorporated, made and sold at Gloucester, Mass., hammock couches alleged to answer to the claims in the complainant's patent; also, inter alia, patent No. 807,797, issued December, 1905, to George H. Winans for a hammock; and evidence by witnesses and illustrations in publications of the manufacture and sale by the defendant in April, 1908, some five months prior to the application for the patent in suit, of hammocks alleged to anticipate that of the complainant.

The claim calls for a settee hammock comprising a seat, and a flexible end connected to each end of said seat. The defendant's structure has these flexible ends. The flexible ends in the complainant's hammock contain pockets through which spreaders or rods are inserted to which are attached the clue cords. The flexible ends, as shown by the drawings and specifications and the hammock in evidence, carry the weight of the seat. The flexible ends with spreaders at the top to which the cords are attached are also present in defendant's construction and operate as a means to support the weight of the seat, additional support being procured by means of steel rods attached to

each corner of the couch and attached to the ends of the end spreaders to which the clue cords are attached. The claim calls for a flexible back connected to the rear of the said seat. This is embodied in the defendant's structure. Further, the claim calls for a spreader secured to the free edge of the flexible back. This is also embodied in the defendant's structure. All of the elements of the claim thus far enumerated are present, not only in the defendant's structure, but in the Gloucester hammock made and sold as early as 1902 and in some of those hammocks a spreader was secured to the free edge of the flexible back. It is shown that the defendant sold hammock couches with detachable flexible backs, or wind shields, and with valances, both having spreaders, as early as April, 1908. Further, the claim calls for a means for detachably connecting the spreaders.

The feature of claim 23, which distinguishes it from the Winans patent and from the Rowe or Gloucester hammocks, consists in the means provided for detachably connecting the back and end spreaders. This feature was apparently considered by the Patent Office, as appears by the file wrapper, in connection with the Winans patent, and claims in which the means for detachably connecting the spreaders were not set out were rejected in view of Winans' patent. In that patent the back or wind shield is attached at its top by means of cords through eyelets to the fabric of the end, and the same is true of the Rowe or Gloucester hammock. So far as the evidence shows, the means for detachably connecting the spreaders themselves, not by means of the fabric of the back or end, but by means secured to and integral with the spreaders themselves, is new as applied to hammocks, unless it was anticipated by the defendant's alleged hook hammock. A model identified by the witness, Renton, and known as the Renton exhibit, shows a detachable connection between the ends of the spreader of the back and the fabric of the end; the union being made by means of a cord or string. The defendant has also produced evidence and a model made from memory to show that the back spreader was connected by means of an iron hook with the end spreader. None of the hammocks alleged to have been so made and sold were produced. While the evidence as to the defendant's construction of a hammock with spreaders for the back and the ends may be sufficient to show that this feature was used by the defendant prior to the application for complainant's patent, the evidence that hooks were used to directly connect the back and end spreaders is not sufficiently clear and satisfactory as to the date of the alleged use of the hook feature to satisfy the court beyond a reasonable doubt of its existence as an anticipation of the connecting feature of the patent in suit. There was considerable argument and testimony of experts as to the feature of rigidity in the complainant's fastening device to hold the end spreaders at right angles to the back spreader. There is, however, no mention in the specifications or claims of this element of rigidity as a feature of the patent, and, while the complainant is entitled to all advantages arising from the results of his device, he is not limited to the rigid connection. I am of the opinion that with the limitations in claim 23 as to the means for detachably connecting the back and side spreaders, com-

plainant's patent is valid as a combination construction as against the prior art, notwithstanding the Kutz patent, No. 853,927, for corner fastening for beds; the Ellsworth patent No. 780,163 for rail joint for bedsteads, and the Ebert patent No. 523,337, for folding crib. As to the Kutz and Ellsworth patents, which are joints or connections for fastening the side rails of beds, while they might have a bearing upon a patent for the complainant's interlocking device alone, they were invented and intended to be used for entirely different purposes involving absolute rigidity in the frame of the bed itself. Even if the connecting device in itself is old, it involves a new and improved construction in which the complainant has combined it with the spreaders of his hammock. As is stated by Judge Gray in the case of Buchanan v. Perkins Switch Mfg. Co., 135 Fed. 90, 67 C. C. A. 564 (C. C. A. 3d Cir.):

"The fact that a new combination or device may be simple and obvious to the ordinary understanding, when once produced in concrete form, does not necessarily prove that invention was not involved. This is almost a commonplace in the jurisprudence of patent law."

See, also, Kisinger-Ison Co. v. Bradford Belting Co., 97 Fed. 502, 38 C. C. A. 300; Barbed Wire Case, 143 U. S. 283, 12 Sup. Ct. 443, 450, 36 L. Ed. 154; Diamond Tire Co. v. Consolidated Rubber Tire Co., 220 U. S. 435, 31 Sup. Ct. 444, 55 L. Ed. 527.

The similarity of the defendant's means for detachably connecting the back and side spreaders to that of the complainant is obvious. The construction in the patent comprehends two members, constituting the interlocking connection between the spreaders of the back and the spreaders of the ends of the hammock. These metallic devices are secured to the wooden ends of the spreaders, and are so shaped that they interlock, or engage, in such a manner that, when engaged, the back spreader and side spreaders are positively connected so as to be held at substantially right angles, and thus form a substantially rigid structure which may be maintained in that condition during the normal use of the hammock. This connection is such that when the weight of the hammock or a person in the hammock draws the clue cords tight in suspending the hammock, the interengaging parts are caused to engage each other in such a manner that the back is held in place and in a substantially rigid connection. By releasing the weight upon the clue cords the end spreaders may be depressed or the back spreader raised and the two disengaged. As clearly stated by the complainant's witness, Mr. Hunter:

"In the defendant's structure, there are metallic interengaging parts for precisely the same purpose. At each end of the upper spreader bar of the back there is a metallic casting, which has a T-shaped hole or slot, and at the end of the spreader bars of the end portions of the settee there are metallic castings which are provided with T-shaped tongues. These T-shaped tongues correspond to the T-shaped construction of the complainant's patent, and they interengage with the slotted portions or sockets in the castings of the end of the spreader bar of the back."

In other words, while the defendant's fastening device consists of two parts which are not identical in construction with the complain-

ant's device, they operate upon precisely the same principle and perform the same mechanical function.

The suspension of the seat of the defendant's hammock, however, is accomplished in a somewhat different manner from that of the complainant, the entire weight of complainant's hammock being supported by the fabric forming the ends, while in the defendant's hammock there are steel rods attached to the ends of the end spreaders and attached by links to the four corners of the seat of the hammock, so that the weight may be either upon the fabric ends or upon the steel rods. It is apparent that in either construction they come within the complainant's claim of a hammock having flexible ends. The addition of the steel rods, which operate to make à mechanically flexible suspension, does not avoid infringement. The device of the rods is claimed by the defendant to be for the purpose of support so as to allow the flexible ends or curtains to be removed for the purpose of washing. When the fabric end of defendant's hammock is in position, the suspending rods are, by reason of their linked ends, equally flexible with the edges of the fabric end, and are in alignment with the edges of the fabric in whatever motion the hammock is given. It is apparent that they are merely additional contrivances which add nothing to the patented device to eliminate its essential features, and therefore are not sufficient to relief from infringement. Western Electric Co. v. La Rue, 139 U. S. 607, 11 Sup. Ct. 670, 35 L. Ed. 294; Cochrane v. Deener, 94 U. S. 786, 24 L. Ed. 139; Union Paper Bag Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935.

The defendant's fasteners and steel rods are a mere adaptation of equivalents to perform the same functions as in the complainant's patent in the same manner. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122; Western Electric Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670, 35 L. Ed. 294.

It is concluded, therefore, that the defendant's hammock is substantially similar in construction and mode of operation to complainant's patented hammock, and is a combination of the elements contained in claim 23 of complainant's patent, and infringes that claim.

A decree may be entered in favor of the complainant.