ROBINSON v. AMERICAN FRUIT MACHINERY CO. et al.

(District Court, E. D. Pennsylvania. July 13, 1914.)

No. 553.

1. PATENTS (§ 75*)—"PRIOR USE"—ABANDONED EXPERIMENT.
    A prior use, in order to negative novelty in a later patented device, must be something more than an accidental or casual one, and must be so far understood and practiced or persisted in as to contribute to the sum of human knowledge and be accessible to the public, becoming an established fact in the art.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 92–97; Dec. Dig. § 75.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—VEGETABLE PARING MACHINE.
    The Robinson patent, No. 942,932, for a vegetable paring machine, claim 18, held not void for prior invention by another, nor for prior public use, but to disclose invention and utility; also held infringed.

In Equity. Suit by Henry Robinson against the American Fruit Machinery Company and another. On final hearing. Decree for complainant.

H. S. MacKaye, of New York City, for plaintiff.
Ernest Howard Hunter, of Philadelphia, Pa., for defendants.

THOMPSON, District Judge. This is a suit for an injunction and accounting based upon the complainant's letters patent for improvement in vegetable paring machine, No. 942,932, issued December 14, 1909.

The defendant the American Fruit Machinery Company is charged with infringement in the manufacture and sale, and the defendant V. Clad & Sons, in the sale of potato paring machines, which the defendants admit by stipulation conform to the terms of claim 18 of the patent. The defenses are that the claim is invalid for want of inven-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion and prior knowledge and use, and that if the claim describes a patentable invention it is the invention of one Orson W. Brenizer and not of the patentee. On April 9, 1910, after the issue of the complainant's patent. on December 14, 1909, an application was filed by Brenizer, a former employé of the defendant, the American Fruit Machinery Company, claiming priority of invention of the subject-matter of claim 18. This application was assigned to the American Fruit Machinery Company, and was placed in interference with the Robinson patent for the purpose of determining the question of priority. This issue was determined in favor of Robinson by the tribunals of the Patent Office, and, at the time of the hearing, was pending before the Court of Appeals of the District of Columbia, patent appeal No. 854. Since the hearing in this court, the attention of the court has been called to a decision of the Court of Appeals of the District of Columbia affirming the decision of the Commissioner of Patents. It is apparent that Brenizer's claim of priority has been carefully and thoroughly considered by the tribunals vested by Congress with power to determine such questions in interference cases. The decision of the Court of Appeals, however, does not preclude the defendants herein from the right to contest the validity of the patent in this court. Comp. St. § 4914 (U. S. Comp. St. 1901, p. 3392).

The evidence of prior invention by Brenizer has been carefully considered, and, without reviewing it, or passing upon the question of res ·judicata as to this question, it is sufficient to say that the defendants herein have failed to prove Brenizer's priority of invention by proof of such satisfactory character as to be convincing beyond a reasonable doubt. By an amendment to their answer, the defendants alleged invalidity of the claim in suit because of prior knowledge and use by W. A. Case & Sons Manufacturing Company, Fred A. Mason, the Niagara Specialty Company, and Walter Northrup.

The patented machine consits of a cylindrical pot or container having at its bottom a rotary disc with an irregular surface. The potatoes are thrown into the container and the bottom disc is rotated, causing the potatoes to be revolved within the container and agitated so that they will come in contact with the abrading surfaces of the rotary disc and side walls, causing removal of the skin. The potatoes are moved outwardly by centrifugal force, crowding up against the sides of the container so that those at the top are forced again towards the center and fall back upon the central part of the disc. By this circulation all portions of the skins are subjected to the operation of the abrading surfaces. When there is rapid rotation of the abrading disc, however, there is a tendency of the potatoes to circulate horizontally in the container without the desired vertical circulation. The improvement consists in a lug or projection secured to the wall of the container which tends to prevent this horizontal circular motion by diverting the course of the potatoes at the top and forcing them towards the center so that they will circulate vertically. Claim 18 of the Robinson patent is as follows:

"In a machine of the character described, a container having a cylindrical wall provided with a scoop-shaped lug in combination with a rotating abrading member, said lug overhanging the rotating abrading member."

The device which constitutes the improvement and is called the "diverter" is described in the patent as follows:

"A further device that I may employ for compelling the flow of vegetables toward the center of the container is a scoop-shaped lug *1a* formed on or affixed to the wall of the container, preferably immediately opposite the door opening therein, projecting in a curved line in the direction of motion of the vegetables and incurved toward the center of the container. Its surface, or the part thereof subjected to the impact of the vegetables, is, as shown, smooth, or may be covered with the same abradant material as the rest of the container wall. Such a lug acts, not only centripetally on the vegetables, preventing clogging of the latter against the container wall, but, arranged as here described immediately opposite the discharge door, serves to positively direct the vegetables through the door opening when the door is opened—the rotating motion of the bottom being maintained. Preferably, as shown, the lug *1a* is hinged at *1b* to the side wall of the container and adapted to automatically reverse its position from side to side when the direction of rotation of the bottom plate is reversed so as to always offer to the advancing mass of vegetables the surface of the lug having the proper scooplike form."

[1] An exhibit, designated as the Niagara Specialty Company's machine, was produced in evidence which, according to the testimony of Fred A. Mason, superintendent of W. A. Case & Sons Manufacturing Company, is one of a number made for a corporation called the Niagara Specialty Company in 1906 by the Case Company. This machine has the cylindrical containers and an abrading rotary bottom disc, and is further supplied with what Mr. Mason calls "two little cleats on the side of the cylinder." Upon the drawings from which the machines were made these cleats are called "kickers." There was evidence that about a dozen of these machines were made and are still in the possession of W. A. Case & Sons Manufacturing Company, with the exception of one, which was sent to some one upon the Pacific Coast. According to the testimony of Walter Northrup, he invented the machine in question, and the "kickers" or "diverters" were provided for the purpose of guiding the potatoes towards the center. The diverters in the Niagara Specialty Company's machine are curved plates attached to the inner walls and extending of the same width from the top to the bottom of the cylinder. There is no evidence to show that they are capable of performing the function of the diverters in the complainant's machine. It is apparent from the construction of the complainant's diverter, in that it is wide at its top and tapers to a point at its bottom and does not reach to the bottom of the container, or, to use the language of claim 18, is constructed with "said lug overhanging the rotating abrading member," that the result of its use would be to force the potatoes at the top towards the center so that they will circulate vertically, and that the result of the overhanging lug and the tapering shape would be not to divert or interfere directly with the course of the potatoes at the bottom of the container. In the Niagara Specialty Company's machine the diverter, which is claimed to be Northrup's invention, reaching as it does from the top to the bottom of the container of the same width and extent of projection, would operate to divert the course of all the potatoes which rotate against the side of the container, whether at the top or bottom, away from their course and crowd them towards the center, and there is no evidence to show that this device would accomplish the same result as that in

the complainant's patent. Mr. Mason testified that he did not consider the diverter successful, and it is apparent that so far as its use in this country is concerned it was abandoned after its experimental use had failed, and the company which was organized to sell the machine went out of existence without succeeding in introducing or selling them.

"A prior use, in order to negative novelty in a later patented device, must be something more than an accidental or casual one, and must be so far understood and practiced or persisted in as to contribute to the sum of human knowledge and be accessible to the public, becoming an established fact in the art." Anthracite Separator Co. v. Pollock et al. (C. C.) 175 Fed. 108.

Mr. Northrup testified that 200 or 300 of the machines were sold in Canada. This statement is entirely uncorroborated and, if true, would not affect the validity of the patent in suit. While the Niagara Specialty machine shows an effort upon the part of some one to accomplish the result which is intended to be accomplished by the complainant's improvement, there is not sufficient substantial identity in the two contrivances to negative novelty in the complainant's invention. It is urged by the defendants, however, that the device lacks patentability because it is not a product of the inventive faculty, but rather of mere mechanical skill. In the potato paring machines in use prior to the Robinson patent, the difficulty experienced was in overcoming the tendency of the rapid centrifugal motion to prevent the vertical circulation of the potatoes so that those at the top would reach the bottom. The defect in the old machines was obvious, and the problem was to find a means to overcome the difficulty, which would be effective in causing uniformity in the pared potatoes and in the saving of very considerable time in removing the peeled potatoes and starting anew with those which had not reached the abrading surfaces. While the device of the complainant is certainly not one requiring the exercise of a high degree of inventive genius, yet it is apparent that the complainant discovered in his scoop-shaped diverter a means to cause the potatoes at the top to reach the bottom and to cause the whole mass of potatoes thereby to be evenly and uniformly peeled. This was clearly a new and useful improvement and the fact that in the Niagara Specialty machine the same result had been attempted without success is evidence that more than mere mechanical skill was required to produce the result.

"The fact that a new combination or device may be simple and obvious to the ordinary understanding, when once produced in concrete form, is not necessarily proof that invention was not involved. This is almost a commonplace in the jurisprudence of patent law." Buchanan v. Perkins Electric Switch Mfg. Co., 135 Fed. 90, 67 C. C. A. 564.

[2] It is concluded, therefore, that the complainant's device is patentable; that so far as appears by the evidence in the case he was the first inventor, and he is therefore entitled to the relief prayed for.

A decree will be entered accordingly.